CLIO REALTY CORPORATION, Plaintiff, *v.* HEFLAM BUILDING CORPORATION and Others, Defendants, Impleaded with BENJAMIN PENZEL and Another, Appellants, and BRIGHTON LUMBER & TRIM Co., INC., and Others, Respondents.

Second Department, December 13, 1929.

*Joseph Feldman* [*Louis Rosenberg* with him on the brief], for the appellants.

*Samuel Rabinowitz,* for the respondent Brighton Lumber & Trim Co., Inc.

*Samuel Rothstein,* for the respondent Standard Lime Company.

Young, J. This action was to foreclose a mortgage, and as a result of a sale therein there was a surplus of over $2,000 which is the subject of this appeal. A referee was appointed to determine the rights of the claimants to this surplus and he filed his report on July 22, 1929. The findings of fact made by the referee are not disputed. He found in substance that all of the mechanics' liens filed against the property were good and valid liens in the sums found; also the dates upon which each lien was filed; also that, on March 3, 1928, the corporation owner of the premises made its bond and mortgage to three trustees for $60,000 to be paid on or before three years from the date thereof, with interest; that both the bond and mortgage contained a clause reciting that they were executed and delivered in accordance with section 26 of the Mechanics' Lien Law of New York and pursuant to agreements of even date between the mortgagor, the mortgagees and the creditors of the mortgagor included thereunder; that, by an instrument in writing duly acknowledged and filed in the clerk's office of Kings county on April 6, 1928, mechanics' lienors having liens against the property described in the complaint, filed up to and not later than fifteen days after the recording of the said mortgage, and which liens have not been discharged, to the extent of at least seventy-five per cent of the aggregate of mechanics' liens then filed against the property, approved the said bond and mortgage and that such instrument complied as to form and sufficiency with requirements of section 26 of the Lien Law; that no work was done upon the buildings covered by the said mortgage after the mortgage was executed and recorded; that no moneys were advanced thereunder for any purpose whatsoever, and no materials were furnished in connection with the completion of the building subsequent to the execution and recording of said mortgage, and that no certificates were issued by the trustees under said mortgage for any work performed or materials furnished subsequent to the execution and recording of the said trust mortgage. As a conclusion of law, the referee found in substance that the surplus fund amounting to $2,220.89 should be distributed after the payment of the expenses

of the reference *pro rata* among the mechanics' lienors appearing and proving their liens in this proceeding according to the respective amounts of their liens.

The appellants thereupon moved to modify the referee's report by rejecting the conclusion of law therein that the various lienors should share *pro rata* in the surplus money, and for an order directing the payment of such surplus money to the appellants to be applied in payment of their lien, which was for $6,252.

The learned Special Term denied this motion and made the order appealed from.

The question presented by this appeal involves a construction of the provisions of section 26 of the Lien Law, as added by chapter 507 of the Laws of 1916, and prior to its amendment by chapter 515 of the Laws of 1929. The constitutionality of sections 26 to 30 was upheld in *Fine & Sons, Inc., v. Lindarose, Inc.* (220 App. Div. 616; modified on other grounds, 248 N. Y. 137). This seems to be the only case reported in which this section has been considered. Section 26 (*supra*) provides in substance that, in case an owner of real property shall execute to trustees a bond and mortgage affecting such property, and in case such mortgage shall be recorded in the office of the register of the county where the property is situated, and in case lienors having mechanics' liens against the property filed up to and not later than fifteen days after the recording of the mortgage and which liens have not been discharged, shall, to the extent of at least seventy-five per cent of the aggregate amount for which such liens have been so filed, approve such bond and mortgage by an instrument in writing duly acknowledged and filed in the office of the county clerk, then all mechanics' liens affecting such property or any part thereof, whether theretofore or thereafter filed, and which have not been discharged, shall be subordinate to the lien of such trust bond and mortgage to the extent of the aggregate amount of all certificates of interest therein issued by such trustees for moneys loaned, materials furnished, labor performed and any other indebtedness incurred after said trust mortgage shall have been recorded, " and from the date of the filing of such approval the respective mechanics' lienors, except those whose liens have been discharged as in this article provided, shall have no priority over each other with respect of their several liens, and their liens shall thenceforth be of equal priority," except as to certain liens not material to the question presented here.

It is contended by the appellants in substance that their lien, being the first filed, is entitled, under section 13 of the Lien Law (as amd. by Laws of 1916, chap. 507),* to priority over the other

---

* Since amd. by Laws of 1929, chap. 515.— [Rep.

liens, notwithstanding the execution and delivery of the so-called trust mortgage. This contention is based on the further claim that something more than compliance with the mere formalities prescribed by section 26 (*supra*) is necessary to destroy the priority created by section 13, and that, as no work was done upon the buildings covered by the mortgage after its execution and recording, no moneys advanced thereunder, no materials furnished for the completion of the buildings, and no certificates issued by the trustees for any work performed or materials furnished subsequent to the execution and recording of the trust mortgage, the mere execution, recording and approval of that mortgage did not, *per se*, destroy the priority of the appellants' lien.

On the other hand, the respondents contend in substance that there is no uncertainty or ambiguity in the language of section 26 (*supra*); that it provides that, where a mortgage is executed like the one in question here, and is recorded, and has been approved, as provided in the statute, all mechanics' liens become subordinate to the lien of the mortgage to the extent of the aggregate amount of all certificates of interest therein, etc., and further that, *from the date of the filing of such approval*, such mechanics' lienors shall have no priority over each other. Respondents claim that the situation disclosed here is precisely within the language of the statute. A trust mortgage has been executed as therein provided; it has been recorded, and approval thereof by seventy-five per cent of the lienors has been filed. Therefore, within the precise language of section 26 (*supra*), these mechanics' liens are not only subordinate to the trust mortgage, but, after the filing of the approval, their priority over each other was destroyed. In other words, the destruction of the priority of the liens is not dependent upon the advancement of any moneys under the trust mortgage or the issuing of any certificates of interest therein, but solely and only upon the execution and recording of the mortgage and the filing of the written instrument of approval provided for in the statute.

In my opinion, this construction of the statute is entirely too narrow. It hardly seems possible that the Legislature could have intended that the mere compliance with these formal requirements, without any consideration or benefit resulting to any one, should have the effect of destroying the priority of the several liens.

The main object sought to be accomplished by this statute was evidently the subordination of mechanics' liens to the lien of a trust bond and mortgage, executed and approved as therein prescribed. This subordination is, by the language of the statute, expressly limited to the extent of the aggregate amount of all certificates of

interest in the bond and mortgage thereafter issued by the trustees " for moneys loaned, materials furnished, labor performed and any other indebtedness incurred " after the recording of the trust mortgage. In the case at bar, therefore, the purpose of the statute has not been accomplished. Nothing has been advanced under the mortgage nor have any certificates of interest therein been issued by the trustees. There is, therefore, no subordination of the lienors to the mortgage. As the purpose of the statute has not been accomplished in making the liens subordinate to a trust mortgage upon which advances have been made, the reason for the destruction of the priority of the liens, in my opinion, also fails. In other words, priority of the liens cannot be destroyed by the mere execution, delivery and filing of the papers referred to in the statute with no value received by anybody in consequence thereof.

In the case of *Fine & Sons, Inc.,* v. *Lindarose, Inc.* (248 N. Y. 137) the Court of Appeals had under consideration section 29 of the Lien Law, which contained provisions similar to those contained in section 26 (*supra*). In that case the required percentage of lienors properly authorized four persons to consent to the execution of a mortgage, but no formal consent was ever given by them and none was filed, and it was held that the rights of a dissenting lienor were unaffected, the court saying:

" By this judgment a mechanic's lien has been subordinated to a subsequent mortgage. This may be done under authority of section 29 of the Lien Law (Cons. Laws, ch. 33). But a lienor is not to be deprived against his will of rights long ago conferred upon him, except by strict adherence to the essential provisions of the statute.

" Where the owner of land against which liens have been filed, wishes a loan secured by a mortgage thereon, and where 75 per cent of the lienors, by a writing duly acknowledged, shall authorize one or more persons to consent to the execution of such mortgage, if such consent shall be given in writing duly acknowledged and shall be filed in the office of the county clerk, together with the original authority, then all mechanics' liens shall be subordinated to the lien of the mortgage. So, too, from the date of the filing of the consent, priority among liens themselves is destroyed. * * *

" The idea of the statute is to permit the necessary financing of construction unembarrassed by the objection of a few lienors. But until the consent is filed the results intended are not accomplished. Nor until filed, has a dissenting lienor any notice that his claim has been affected, and if so under what conditions. Each provision of the statute is essential. The requirement as to filing is not merely formal." (Pp. 138, 139.)

In that case, unlike the case at bar, moneys had been advanced upon the mortgage, and the question presented there was whether the subordination of the liens had been accomplished. It does not, therefore, cover the question presented on this appeal. In my opinion, however, the principle laid down in that case has some application to the question presented in the case at bar. Subordination of the liens to the mortgage cannot be accomplished without strict compliance with the requirements of the statute. The priority of the liens over each other may not be destroyed without equal compliance with the statute. This compliance means something more than the mere execution and recording of the mortgage and the filing of the approval by the lienors. In order to accomplish subordination, there must be something advanced upon the mortgage. To destroy the priority of the liens, subordination must be accomplished. As, in the case at bar, there was nothing but a paper mortgage with no value advanced thereupon, there could be no subordination and, therefore, no destruction of priority. The provision of section 26 (*supra*) for the destruction of such priority cannot be singled out from the remainder of the statute and construed by itself. It must be read in connection with the other provisions of the statute, and must also be construed in the light of the legislative purpose.

In my opinion, therefore, the order should be reversed upon the law, without costs, and the motion granted, without costs.

LAZANSKY, P. J., RICH, SEEGER and SCUDDER, JJ., concur.

Order denying motion to confirm in part and reject in part referee's report in surplus money proceedings reversed upon the law, without costs, and motion granted, without costs.