Jacob Ark, J.
This is a motion by a lienor to confirm the referee’s report in a .surplus-money proceeding arising out of the foreclosure of a mortgage executed by Stark-Center Corp. (herein Corporation) to Monroe Savings Bank, dated and recorded on September 17, 1971, for the sum of $448,000, covering a 48-apartment complex in the Village of Waterloo, New *953 York, made up of four separate buildings, each containing 12 units.
Beginning about July 2, 1971 the First National Bank of Waterloo, New York (herein Bank) made loans to ¡the Corporation to finance temporarily, in part, the construction of the apartment buildings described in the mortgage delivered to the Monroe Savings Bank. These loans totaled several hundred thousand dollars, some of which were repaid from 'advances made by the Monroe Savings Bank. The last loan made by the Bank to the ¡Corporation was on January 13, 1972. However, it was not until April 1, 1972 that the Corporation executed and delivered a mortgage in the sum of $180,000 to secure 'any note, obligation or other debt then o,r thereafter owing from the Corporation to the Bank. The instrument contained the section 13 of the Lien Law trust fund covenant.
A security agreement given by the Corporation to the Bank dated June 24, 1971 does not contain a trust fund covenant in compliance with the statute. No evidence was submitted at the hearing to prove ¡that the Corporation by written agreement, covenanted to receive funds as a trust fund to be applied to the cost of the 'improvements, other than the April 1, 1972 mortgage.
The Corporation had not completed the improvements on the real property :a!t the time the B'ank mortgage was recorded on April 3,1972. Since the Bank made no new advances or loans to the Corporation 'after January 13,1972, the mortgage secured pre-existing indebtedness only. There remains due to the Bank on the loan secured by the mortgage the principal sum of $165,322.75 and interest.
Seven mechanic’s liens were filed against the improvement before the bank mortgage was recorded and five were filed subsequent thereto. There is no dispute concerning the priority in payment of the seven liens. The principal issue in this proceeding is whether the Bank mortgage has priority in payment over the five liens that were filed later. The Bank is the only party that opposes the confirmation of the referee’s report and seeks an order granting priority to its mortgage over the five liens in question, or in the alternative, the reopening of the surplus money proceeding for the purpose of taking additional evidence as to the exact use that was made of the proceeds of the loans it made to the Corporation. In support of its position the Bank furnished an affidavit sworn to by one of the .officers which states that it has canceled checks and bank records of deposit indicating that “ substantially” .all of the money advanced by it to the *954 Corporation during the period from June, 1971 to January, 1972 was paid to contractors who were performing labor and supplying materials to the real property being improved. It also states that 'this evidence was available at the hearing bef ore the referee who refused to receive it.
The referee’s ruling was correct, as a mortgage given to secure funds for an improvement to real property has priority only “ to the .extent of advances ” made by virtue of the mortgage, and since the Bank made no advances on this mortgage within the meaning of subdivision (2) of section 13 of the Lien Law, all loans to the Corporation were made by the Bank without the guarantee of a trust fund covenant. As pointed out by the referee, the Corporation received no “ advances ” that could be subject to the covenant required by subdivision (3) of section 13 of the Lien Law, which provides that the “advances are those made at or after the execution of the mortgage containing the covenant for a ‘trust fund. ”
The Corporation could not effectively agree to receive as a trust fund money that was paid to it and which it spent long before the execution of 'the instrument that speaks of a trust fund. In recording the mortgage the Corporation did not create a trust fund1 for those who were to have the benefit of the statutory protection. When the Corporation gave the mortgage to the Bank, it received nothing in .return. The fact ‘that the mortgage contained the subdivision (3) of section 13 of the Lien Law covenant is of no consequence as it brought no funds that could be available to the then present or future suppliers. It merely put in mortgage form the indebtedness for loans which had already been made and expended.
What the Bank seeks in this proceeding is a priority of its claim over the five subsequent lienors by virtue of the trust fund provision in a mortgage executed on April 1,1972. The Bank’s reliance upon section 70 of the Lien Law is misplaced. It is interesting to note, however, that in Seaboard Sur. Co. v. Massachusetts Bonding & Ins. Co. (17 A D 2d 795) the court said:
“ Under section 70 of the Lien Law a trust is created only when certain described moneys come into the hands of an owner or contractor. ’ ’
In Clio Realty Corp. v. Heflam Bldg. Corp. (227 App. Div. 439, 443) which involved section 26 of the Lien Law, this applicable principle was quoted: £ 1 priority of the liens cannot be destroyed by the mere execution, delivery and filing of the papers referred to .in the .statute with no value received by anybody in consequence thereof. ’ ’
*955 The Bank in its memorandum of law quotes from the opinion in Ausable Chasm Co. v. Hotel Ausable Chasm & Country Club (263 App. Div. 486), in which the court ¡affirmed ¡a judgment subordinating the mechanic’s lien to the mortgage lien. The language used by the court concerning the lienor’s plight in that case can be aptly applied to the mortgagee in the instant case. “ A mechanic’s lien is a ¡creature of statute and relative thereto requirements must be strictly complied with. This lienor could have filed bis lien .against the property upon commencing the job. He did not do this and accordingly, unfortunate as it may seem for his position, lost the protection which he might otherwise have had * * * Suffice to say the mechanic’s lienor slept upon his rights and has now lost them.” (p. 487).
The motion to confirm the .report of the learned referee is confirmed in its entirety 'and'since no issues remain to be fried, the court directs judgment in this proceeding 'accordingly, including the payment of $913.50 to Richard D. Bianchi for stenographic services and ¡the sum of $2,475 to Ernest N. Warren, Esq. for his services as referee, which the court deems to be reasonable.